ORIGINAL

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

UNITED STATES OF AMERICA

v.

STEVEN BERGLUND    (01)
AARON CERPANYA     (02)
ADAM GARDNER       (03)
CODY WADDELL       (04)

**4-20CR-268-P**

No.

```
         U.S. DISTRICT COURT
     NORTHERN DISTRICT OF TEXAS
             FILED

            OCT 1 5 2020

     CLERK, U.S. DISTRICT COURT
     By_____
                Deputy
```

INDICTMENT

The Grand Jury charges:

At all times material to this Indictment:

Introduction

1.     As set forth more fully below, from on or about September 1, 2017 through
July 2018, defendants **Steven Berglund**, **Aaron Cerpanya**, **Adam Gardner**, and **Cody
Waddell** (collectively, "**Defendants**"), together with others known and unknown,
conspired to defraud Blue Cross Blue Shield ("BCBS") and other health care benefit
programs (collectively, "Insurers") by submitting, and causing to be submitted materially
false claims for laboratory services, to wit: **Defendants** submitted claims that falsely
represented that Palo Pinto General Hospital ("PPGH"), a rural hospital, performed the
laboratory services when, in fact, the laboratory services were performed by other
laboratories.  In furtherance of this scheme, defendants used, without lawful authority, the
means of identification of real persons.  As a result of the scheme, Insurers paid more for
the laboratory services than they would have had they been given accurate information.

## The Defendants and Others Relevant to the Scheme

2.      **Berglund** was a resident of Dallas, Texas and co-owned Elite MSO Health Services, LLC, doing business as Elite Healthcare (used interchangeably, "Elite Healthcare"), along with **Cerpanya** and others.  Elite Healthcare was located in Farmers Branch, Texas.  **Berglund** operated other companies that went by various names, including Alliance and Endeavor.

3.      **Cerpanya** was a resident of Grapevine, Texas and co-owned Elite Healthcare, Alliance, and Endeavor with **Berglund** and others.

4.      **Gardner** was a resident of Fort Worth, Texas and Co-Founder of MedHealth Solutions, LLC ("MedHealth"), was located in Fort Worth, Texas and provided consulting and other services in the health care sector.

5.      **Waddell** was a resident of Fort Worth, Texas and President/Co-Founder of MedHealth, along with **Gardner**.

6.      Palo Pinto General Hospital ("PPGH"), located in Mineral Wells, Texas, was owned and operated by the Palo Pinto County Hospital District, organized under the laws of the State of Texas, and its purpose was to serve as a general acute care hospital for the county.

7.      Harris Brooks was a resident of Mineral Wells, Texas and was the Chief Executive Officer of PPGH.  As CEO, Brooks was responsible for authorizing PPGH to participate in the scheme to defraud, which the coconspirators often referred to as PPGH's "outside lab program."

8. Billing Company-1, an Australian-based company, performed billing on behalf of PPGH's outside lab program. Bills were sent electronically to Insurers from Sri Lanka using interstate and foreign wire transmissions.

## The Health Care Benefit Programs

9. BCBS and other insurers offered health care benefit programs in the State of Texas to individuals enrolled for coverage under individual and employer-sponsored group plans. Individuals who received health care benefits were referred to as "Subscribers" or "Members." At times, BCBS acted as a third-party administrator for self-funded plans.

10. Each individual and group insurance plan detailed the benefits available to Members, including inpatient and outpatient services for hospital-related care, which included laboratory services. Each insurance plan specified, among other things, the amount of the Member's copayment, coinsurance, and deductible for covered items and services.

11. Laboratories, physicians, and other health care providers, including hospital-based providers such as PPGH, often applied to an insurer to become "in-network." In-network providers were reimbursed by the insurer at a rate set by contract and typically involved lower out-of-pocket costs for patients.

12. By contrast, reimbursement rates for "out-of-network" providers were not set by contract and typically involved higher out-of-pocket costs to patients.

Coverage of Laboratory Services

13.     Insurers offered health benefit plans to Members that covered expenses for medically necessary laboratory services, which varied based on the medical needs of each individual patient.

14.     Laboratory tests were routinely ordered for Members by physicians in conjunction with the Member's medical care.  The amount of reimbursement varied per insurer based on the contractual agreements between the healthcare provider, the laboratory, and the insurer.

15.     BCBS and other insurers used in-network or preferred laboratories.  The laboratories involved in this scheme, however, were out-of-network.  In some instances, Insurers would not reimburse out-of-network laboratories for services rendered.

16.     PPGH was an in-network provider for BCBS and many other insurers.  In addition, PPGH's status as a rural hospital enabled it to receive higher rates of payment in some instances than hospitals located in urban areas.  PPGH's in-network contracts and status as a rural hospital made PPGH a lucrative target for the fraud scheme, because it involved higher rates of reimbursement than if the out-of-network laboratory had billed.

Claim Submission Process

17.     To obtain payment from the Insurers, the provider or laboratory was required to submit claims to the Insurers that included, among other things, the following information: a unique provider identification number called the National Provider Identifier ("NPI"), the patient's name, the patient's diagnosis described by a standardized

code, a description of the service(s) rendered to the patient using standardized codes, the date and location the services were provided, and the amount claimed for payment.

18. BCBS and other health care benefit programs expected providers and laboratories to submit true, complete, and accurate claims. Because reimbursement rates varied between providers and laboratories, inaccurate information about where or by whom services were provided could result in overpayment.

Count One
Conspiracy to Commit Wire and Healthcare Fraud
(Violation of 18 U.S.C. § 1349 (18 U.S.C. §§ 1343 and 1347))

19.     Paragraphs 1 through 18 of this Indictment are realleged and incorporated by reference as though fully set forth herein.

20.     On or about September 1, 2017, through in or about July 2018, in the Northern District of Texas and elsewhere, defendants **Steve Berglund, Aaron Cerpanya, Adam Gardner**, and **Cody Waddell**, along with others known and unknown, did knowingly and willfully combine, conspire, confederate, and agree with each other to commit wire fraud, in violation of 18 U.S.C. §1343; and health care fraud, in violation of 18 U.S.C. §1347.

Object of the Conspiracy

21.     The **Defendants**, along with others known and unknown, engaged in a scheme to defraud health care benefit programs in order to enrich themselves in violation of 18 U.S.C. §§ 1343 and 1347. The conspiracy involved material misrepresentations, omissions, and other deception to falsely represent to Insurers that medical services had been performed by providers whose reimbursement rates were higher than the providers who actually performed the services.

Manner and Means of the Conspiracy and the Scheme to Defraud

22.     From in or around September 2017 and continuing through in or around July 2018, **Berglund, Cerpanya**, and others known and unknown, doing business as Elite Healthcare, Alliance, Endeavor, and other business names, marketed genetic, allergy, and other laboratory services to physicians and other health care providers not

associated with PPGH. **Berglund** and **Cerpanya** claimed that they would send laboratory samples for non-PPGH patients for processing at PPGH. In reality, the samples were sent to other, out-of-network laboratories, not PPGH.

23.     In some instances, in order to induce health care providers to order laboratory services, **Berglund**, **Cerpanya**, and others offered and paid kickbacks directly and indirectly to providers out of their portion of the proceeds from the scheme.

24.     The **Defendants** knew that the health care providers ordering the laboratory tests were not PPGH health care providers, that PPGH was not conducting the testing on-site, and that the vast majority of laboratory samples collected were not from PPGH patients. Despite the lack of any connection to PPGH, the coconspirators caused the submission of claims to Insurers through interstate and foreign wires, using PPGH's NPI number, which falsely represented that PPGH was doing the testing on-site. These misrepresentations defrauded the Insurers by causing them to reimburse PPGH and pay a higher reimbursement rate than they otherwise would have paid.

25.     In response to concerns expressed by one health care provider about where the laboratory samples were being tested, **Berglund**, **Cerpanya**, and others misled the health care provider into believing that testing was being done at PPGH.

26.     In order to maintain control over the scheme, **Berglund** and others arranged for Billing Company-1 to conduct the billing of the fraudulent laboratory claims on behalf of PPGH, even though PPGH had an internal billing department that typically billed insurance providers for laboratory services actually performed at PPGH.

27.    The **Defendants** oversaw the implementation of the billing scheme at PPGH in conjunction with Brooks, Billing Company-1, and others known and unknown.

28.    In submitting claims for reimbursement, the coconspirators possessed, transferred, and used the means of identification of patients, without lawful authority, during and in relation to their fraudulent scheme.

29.    In order to prevent patients from complaining to Insurers or alerting the press to the fraud, the coconspirators agreed not to charge patients any out-of-pocket fees. Despite this, some patients noticed on their explanation of benefits that PPGH, which they had never heard of before, billed thousands of dollars for laboratory services. **Berglund**, **Cerpanya**, and others at Elite, along with Billing Company-1 tried to address any such patient complaints or questions. The coconspirators would reassure patients that there would be no out-of-pocket costs and would lie to patients, telling them that the laboratory tests were being done at PPGH.

30.    During the course of the conspiracy, the scheme changed to conceal it further. Rather than have the providers who took the laboratory samples send them directly to the outside laboratories, as the coconspirators did early in the conspiracy, beginning in or about April 2018, the coconspirators began to have the providers send samples to PPGH via the mails and commercial interstate carriers. PPGH would then enter each patient's information into its internal medical records, re-package and re-label the samples, and send them via the mails and commercial interstate carriers to outside laboratories for testing.

This was known as the "accessioning" process, and its purpose was, in part, to make it appear to Insurers as though tests were being conducted by PPGH when, in reality, they were not.

## Effect on Health Insurers

31.    Beginning in or about September 2017 and continuing through July 2018, Billing Company-1, on behalf of PPGH, submitted claims to Insurers for laboratory services totaling more than $55 million, the vast majority of which were fraudulent. As a result of these claims, the Insurers paid PPGH more than $8 million. After paying outside laboratories and Billing Company-1, these proceeds were then divided up between the various coconspirators.

## Overt Acts in Furtherance of the Conspiracy

32.    In furtherance of the conspiracy and to effect its object, in the Northern District of Texas and elsewhere, **Waddell**, on behalf of MedHealth, signed a Laboratory Services Agreement ("LSA") with Brooks, on behalf of PPGH, effective on or about October 1, 2017. The LSA outlined the terms of the agreement, whereby PPGH agreed to pay MedHealth sixty percent of the monthly "Net Collections" received by PPGH from Insurers as a result of the fraudulent scheme. MedHealth would then pay a portion of the proceeds it received from the scheme to **Gardner** and **Waddell**.

33.    In addition, effective on or about September 1, 2017 and amended on or about October 1, 2017, **Waddell**, on behalf of MedHealth, signed a Management Services Agreement with **Cerpanya**, on behalf of Elite.

In substance, Elite and MedHealth agreed to split their portion of the proceeds from the fraudulent scheme seventy-five percent and twenty-five percent, respectively. Elite was also to receive a flat fee of $20,000 per month.

34. Also in furtherance of the conspiracy and to effect its object, **Defendants** committed and caused to be committed the overt acts alleged in Counts Two through Ten.

All of the above acts were done in violation of 18 U.S.C. § 1349 (18 U.S.C. §§ 1343 and 1347).

Counts Two through Four
Wire Fraud
(Violations of 18 U.S.C. §§ 1343 and 2)

35.    The Grand Jury realleges the allegations set forth in paragraphs 1 through 34 of this Indictment.

36.    On or about the dates specified as to each count below, in the Northern District of Texas and elsewhere, defendants **Steve Berglund**, **Aaron Cerpanya**, **Adam Gardner**, **Cody Waddell**, and others known and unknown, aiding and abetting each other and acting for the purpose of executing and attempting to execute the scheme and artifice to defraud described in paragraphs 21 through 34, knowingly caused to be transmitted by means of wire communications in interstate and foreign commerce the signals and sounds constituting a materially false request for reimbursement from BCBS, that is, misrepresenting that laboratory samples were being tested at PPGH when in fact they were being tested at an out-of-network laboratory that had a lower reimbursement rate, each transmission constituting a separate count:

| Count | Member Initials | Date of service | Date of Claim | Description of wire communication | Nature of Misrepresentation |
|-------|-----------------|-----------------|---------------|-----------------------------------|------------------------------|
| 2 | J.P. | 11/03/2017 | 12/06/2017 | Claim for reimbursement sent by Billing Company-1 in Sri Lanka to BCBS in Texas | Claim falsely representing that laboratory services were provided by PPGH when in fact they were provided by an out-of-network laboratory |

| Count | Member Initials | Date of service | Date of Claim | Description of wire communication | Nature of Misrepresentation |
|---|---|---|---|---|---|
| 3 | K.G. | 02/01/2018 | 05/22/2018 | Claim for reimbursement sent by Billing Company-1 in Sri Lanka to BCBS in Texas | Claim falsely representing that laboratory services were provided by PPGH when in fact they were provided by an out-of-network laboratory |
| 4 | M.G. | 03/01/2018 | 03/16/2018 | Claim for reimbursement sent by Billing Company-1 in Sri Lanka to BCBS in Texas | Claim falsely representing that laboratory services were provided by PPGH when in fact they were provided by an out-of-network laboratory |

All in violation of 18 U.S.C. §§ 1343 and 2.

Counts Five through Seven
Health Care Fraud
(Violations of 18 U.S.C. §§ 1347 and 2)

37.     Grand Jury realleges the allegations set forth in paragraphs 1 through 34 of this Indictment.

38.     On or about the dates specified as to each count below, in the Northern District of Texas and elsewhere, defendants **Steve Berglund**, **Aaron Cerpanya**, **Adam Gardner**, **Cody Waddell**, and others known and unknown, aiding and abetting each other and acting for the purpose of executing and attempting to execute the scheme and artifice to defraud BCBS, a health care benefit program as defined by 18 U.S.C. § 24(b) and described in paragraphs 21 through 34, and to obtain by means of materially false and fraudulent pretenses, representations, and promises, in connection with the delivery of and payment for health care benefits, items, and services, by submitting and causing to be submitted false and fraudulent claims to BCBS, that is, misrepresenting that laboratory samples were being tested at PPGH when in fact they were being tested at an out-of-network laboratory that had a lower reimbursement rate, each claim constituting a separate count:

| Count | Member Initials | Date of Service | Dates of Claim | Health Benefit Program | Nature of Misrepresentation |
|-------|-----------------|-----------------|----------------|------------------------|------------------------------|
| 5 | A.P. | 12/04/2017 | 02/06/2018 | BCBS | Claim falsely representing that laboratory services were provided by PPGH when in fact they were provided by an out-of-network laboratory |

| Count | Member Initials | Date of Service | Dates of Claim | Health Benefit Program | Nature of Misrepresentation |
|-------|-----------------|-----------------|----------------|------------------------|------------------------------|
| 6 | L.B. | 03/27/2018 | 04/06/2018 | BCBS | Claim falsely representing that laboratory services were provided by PPGH when in fact they were provided by an out-of-network laboratory |
| 7 | F.H. | 10/31/2017 | 05/09/2018 | BCBS | Claim falsely representing that laboratory services were provided by PPGH when in fact they were provided by an out-of-network laboratory |

All in violation of 18 U.S.C. §§ 1347 and 2.

Count Eight
Aggravated Identity Theft
(Violation of 18 U.S.C. §§ 1028A and 2)

39.     The Grand Jury realleges the allegations set forth in paragraphs 1 through 38 of this Indictment.

40.     On or about March 16, 2018, in the Northern District of Texas and elsewhere, defendants **Steve Berglund**, **Aaron Cerpanya**, **Adam Gardner**, and **Cody Waddell**, aiding and abetting each other and others, did knowingly transfer, possess, and use, without lawful authority, the means of identification of another person, that is, the name and date of birth belonging to M.G., a real person, during and in relation to a felony enumerated in 18 U.S.C. § 1028A(c), that is, wire fraud, in violation of 18 U.S.C. § 1343, as described in Count 4, and conspiracy to commit wire and health care fraud in violation of 18 U.S.C. § 1349, as described in Count 1, knowing that the means of identification belonged to another actual person.

In violation of 18 U.S.C. §§ 1028A and 2.

<u>Count Nine</u>
Aggravated Identity Theft
(Violation of 18 U.S.C. §§ 1028A and 2)

41. The Grand Jury realleges the allegations set forth in paragraphs 1 through 38 of this Indictment.

42. On or about May 9, 2018, in the Northern District of Texas and elsewhere, defendants **Steve Berglund**, **Aaron Cerpanya**, **Adam Gardner**, and **Cody Waddell**, aiding and abetting each other and others, did knowingly transfer, possess, and use, without lawful authority, the means of identification of another person, that is, the name and date of birth belonging to F.H., a real person, during and in relation to a felony enumerated in 18 U.S.C. § 1028A(c), that is, health care fraud, in violation of 18 U.S.C. § 1347, as described in Count 7, and conspiracy to commit wire and health care fraud in violation of 18 U.S.C. § 1349, as described in Count 1, knowing that the means of identification belonged to another actual person.

In violation of 18 U.S.C. §§ 1028A and 2.

Count Ten
Aggravated Identity Theft
(Violation of 18 U.S.C. §§ 1028A and 2)

43.     The Grand Jury realleges the allegations set forth in paragraphs 1 through 38 of this Indictment

44.     On or about December 6, 2017, in the Northern District of Texas and elsewhere, defendants **Steve Berglund**, **Aaron Cerpanya**, **Adam Gardner**, and **Cody Waddell**, aiding and abetting each other and others, did knowingly transfer, possess, and use, without lawful authority, the means of identification of another person, that is, the name and date of birth belonging to J.P., a real person, during and in relation to a felony enumerated in 18 U.S.C. § 1028A(c), that is, wire fraud, in violation of 18 U.S.C. § 1343, as described in Count 2, and conspiracy to commit wire and health care fraud in violation of 18 U.S.C. § 1349, as described in Count 1, knowing that the means of identification belonged to another actual person.

In violation of 18 U.S.C. §§ 1028A and 2.

Forfeiture Notice
(18 U.S.C. § 982(a)(7))

45.     Pursuant to 18 U.S.C. § 982(a)(7), upon conviction of any offense violating 18 U.S.C. §§ 1349, 1347, and/or 1343, the defendant shall forfeit to the United States of America property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the conspiracy and/or scheme to defraud.

46.     The government may seek a forfeiture "money" judgment if property subject to forfeiture is not available as a result of any act or omission of the defendant(s) for one or more of the reasons listed in 21 U.S.C. § 853(p).

47.     The government may seek forfeiture of substitute property from the defendant(s), pursuant to 21 U.S.C. § 853(p).


A TRUE BILL.


FOREPERSON


ERIN NEALY COX
UNITED STATES ATTORNEY


MATTHEW WEYBRECHT
Assistant United States Attorney
Texas State Bar No. 24102642
801 Cherry Street, #4
Fort Worth, Texas 76102
Telephone:  817-252-5200
Fax: 817-252-5455


Indictment (Berglund et al) - Page 18

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

### THE UNITED STATES OF AMERICA

v.

**STEVEN BERGLUND (01)**
**AARON CERPANYA (02)**
**ADAM GARDNER (03)**
**CODY WADDELL (04)**

### INDICTMENT

18 U.S.C. § 1349 (18 U.S.C. §§ 1343 and 1347)
Conspiracy to Commit Wire and Healthcare Fraud
Count 1

18 U.S.C. §§ 1343 and 2
Wire Fraud
Counts 2-4

18 U.S.C. §§ 1347 and 2
Healthcare Fraud
Count 5-7

18 U.S.C. §§ 1028A and 2
Aggravated Identity Theft
Counts 8-10

18 U.S.C. § 982(a)(7)
Forfeiture Notice

A true bill rendered

_____
FOREPERSON

FORT WORTH
Filed in open court this 15th day of October, 2020.

-------------------------------------------------------------------

**Warrants to Issue.**

-------------------------------------------------------------------

_____
UNITED STATES MAGISTRATE JUDGE

2