UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

**UNITED STATES OF AMERICA,**

v.                                                    **No. 4:20-cr-0268-P**

**STEVEN BERGLUND.**

## OPINION & ORDER

Before the Court is Defendant Steven Berglund's Motion to Withdraw Plea of Guilt ("Motion"). ECF No. 168. The Court referred Mr. Berglund's Motion to United States Magistrate Judge Jeffrey L. Cureton ("Magistrate Judge"), who granted the Motion. *See* ECF Nos. 179–182, 197, 199. The Government filed a timely Objection (ECF No. 201); Mr. Berglund filed a Brief in Support (ECF No. 202). The Magistrate Judge's Order is thus ripe for review.

As explained below, the Magistrate Judge erred by analyzing the Motion under Federal Rule of Criminal Procedure 11(d)(1), rather than Rule 11(d)(2)(B); thus, the Court will **REVERSE** the Magistrate Judge's Order. And because Mr. Berglund failed to carry his burden of establishing a "fair and just reason" for withdrawal, the Court will **DENY** the Motion.

## BACKGROUND

On October 15, 2020, Mr. Berglund and three co-defendants were indicted by a grand jury and charged with one count of conspiracy to commit wire fraud and health care fraud, in violation of 18 U.S.C. § 1349; three counts of wire fraud, in violation of 18 U.S.C. § 1343; three counts of health care fraud, in violation of 18 U.S.C. § 1347; and three counts of aggravated identify theft, in violation of 18 U.S.C. § 1028A. *See* ECF No. 1. The indictment alleged, *inter alia*, that the defendants conspired to defraud certain health care benefit programs by submitting, and causing to be submitted, materially false claims for laboratory services. *Id.*

Prior to trial, three co-defendants accepted plea agreements; Mr. Berglund, however, rejected a plea agreement and proceeded to trial. *See* ECF No. 207 at 6–7 ("[W]e have offered a plea agreement, the same in substance as for the defendant that just pled guilty two days ago, and that's with an 11(c)(1)(C) . . . .").

Mr. Berglund's jury trial started on Friday, November 5, 2021. The Government began its case-in-chief following jury selection and opening statements. On the fourth day of trial (Wednesday, November 10, 2021), however, Mr. Berglund's counsel informed the Government that Mr. Berglund wanted to change his plea to guilty. ECF No. 177 at 2–3.

Instead of the previously offered Rule 11(c)(1)(C) plea agreement, the Government offered to drop Counts 2–10 in exchange for Mr. Berglund pleading guilty to Count 1. *Id.* The plea paperwork was prepared, and Mr. Berglund discussed the plea with his attorneys. *Id.*

Mr. Berglund appeared before the Magistrate Judge to plead guilty. *See* ECF Nos. 161, 191. After an extensive plea colloquy, the Magistrate Judge explicitly accepted the guilty plea and adjudged Mr. Berglund guilty: "I hereby accept your plea of guilty, Mr. Berglund, and I will pronounce you guilty of the offense charged in Count 1 of the indictment." ECF No. 191 at 27. The Parties then appeared before the undersigned, where a second, shorter colloquy occurred. *See generally* ECF No. 173. During this second colloquy, the Court: (1) declared, based solely on Mr. Berglund's guilty plea, that the guilt phase of the case was over; (2) released the jury from their service; (3) placed Mr. Berglund under presentencing conditions; and (4) advised Mr. Berglund that he was now in the sentencing phase and encouraged him to spend time with his family before his sentencing date. *Id.* The Court also set the pertinent sentencing dates, and later issued a Scheduling Order to govern the sentencing phase a few days later. *See* ECF No. 167.

Six days after pleading guilty, and after the Court issued its Scheduling Order (ECF No. 167), Mr. Berglund filed a Motion to Withdraw a Plea of Guilt pursuant to Rule 11(d)(2)(B). ECF No. 168. Mr. Berglund also filed medical information under seal alleging that, on the

night he pleaded guilty, he suffered from moderate symptoms such as fatigue, disorientation, stress, and palpitations. *See* ECF Nos. 169, 183.

The Court referred the Motion to the Magistrate Judge, who held a hearing. ECF No. 179. The Magistrate Judge granted the Motion. ECF No. 197, 199. In accordance with the Order Denying Mr. Berglund's Motion to Continue (ECF No. 192), the Magistrate Judge based his decision to grant the Motion on Rule 11(d)(1), rather than Rule 11(d)(2)(B)—the *only* Rule Mr. Berglund asserted in his Motion. *See* ECF No. 192 ("[T]he Motion to Withdraw Plea of Guilty will be analyzed pursuant to Rule 11(d)(1) of the Federal Rules of Criminal Procedure . . . ."); ECF No. 199 at 6 ("[I]t's my intention to proceed under (d)(1), based on the record I have, which means Mr. Berglund can withdraw his guilty plea for any reason or no reason at all, as the rule says."). The Government filed a timely Objection (ECF No. 201); Mr. Berglund file a Brief in Support (ECF No. 202).

## STANDARD OF REVIEW

"A district judge may refer to a magistrate judge for recommendation a defendant's motion to dismiss or quash an indictment or information, a motion to suppress evidence, or any matter that may dispose of a charge or defense." FED. R. CRIM. P. 59(b)(1). "The district judge must consider de novo any objection[1] to the magistrate judge's recommendation." *Id.* 59(b)(3). And the "district judge may accept, reject or modify the recommendation, receive further evidence, or resubmit the matter to the magistrate judge with instructions." *Id.*

---

[1]Although "a party may serve and file specific written objections to the proposed findings and recommendations" "[w]ithin 14 days," *id.* 59(b)(2), nothing in the Federal Rules of Criminal Procedure *requires* a district court to wait the entire 14 days to either accept or reject a magistrate's recommendation. This applies to guilty pleas and the instant Motion. To conclude otherwise would cause a district court to lose, rather than retain, its "ultimate control over the plea proceedings" for a 14-day period. *United States v. Jimenez-Elvirez*, 862 F.3d 527, 538 (5th Cir. 2017) (citing United *States v. Dees*, 125 F.3d 261, 268 (5th Cir. 1997)). Further, to conclude otherwise would allow every criminal defendant that pleads guilty before a magistrate during trial to have a free, two-week period to withdraw that plea—essentially giving them two bites at their trial. Limited judicial resources cannot afford such a loophole or the opportunity for such gamesmanship.

## LEGAL STANDARD

Federal Rule of Criminal Procedure 11 outlines two very distinct procedures to withdraw a defendant's guilty plea depending on whether the guilty plea was accepted *prior* to the filing of the motion to withdraw. *Compare id.* 11(d)(1), *with id.* 11(d)(2)(B).

### A.  Accepting a Guilty Plea Under Rule 11

Whether a court analyzes a motion to withdraw under either Rule 11(d)(1) or Rule 11(d)(2)(B) therefore depends on whether the district court had accepted the guilty plea prior to the motion being filed. Although Rule 11 articulates the procedure for entering or withdrawing a guilty plea, "Rule 11 does not prescribe any specific language of acceptance." *United States v. Byrum*, 567 F.3d 1255, 1261 (10th Cir. 2009); *United States v. Battle*, 499 F.3d 315, 321 (4th Cir. 2007) ("Rule 11 is silent as to how a district court must signal its acceptance of a guilty plea."); *see also* FED R. CRIM. P. 11(g) (requiring only that the proceedings during which the defendant enters a plea "be recorded by a court reporter or suitable recording device" and that the record include certain inquiries). To that end, "imposing a requirement on the district court to utter some talismanic words to effect an acceptance is not supported by the Federal Rules of Criminal Procedure or the case law." *Byrum*, 567 F.3d at 1261.

To fill this procedural void, the Fifth Circuit allows a guilty plea to be accepted either explicitly or implicitly. *See United States v. Cessa*, 626 F. App'x 464, 468 (5th Cir. 2015) (reiterating that the Fifth Circuit has "suggested that a guilty plea could be accepted either by 'explicit language or an implicit acceptance'" (quoting *United States v. Arami*, 536 F.3d 479, 482 (5th Cir. 2008))); *United States v. Gutierrez-Gress*, 458 F. App'x 404, 405 (5th Cir. 2012) (holding that although "[t]he record supports that the district court failed to make an explicit adjudication of guilt . . . the record further shows that the district court implicitly accepted [the defendant's] guilty plea"). When analyzing whether a court accepted a guilty plea, "what matters ultimately is the language of the trial court and the context in which it is used." *United States v. Tyerman*, 641 F.3d 936, 943 (8th Cir. 2011) (quoting *Byrum*, 567 F.3d at 1261).

4

By explicitly or implicitly accepting a defendant's guilty plea, the court is necessarily accepting two components: the defendant's *plea* and the plea *agreement*. *See United States v. Hyde*, 520 U.S. 670, 677–78 (1997) (distinguishing a plea from a plea agreement); *United States v. Jones*, 472 F.3d 905, 909 (D.C. Circuit 2007) (same). These two components, however, need not be accepted at the same time. To ensure efficient judicial proceedings and to guard against potential gamesmanship by defendants, the Fifth Circuit has instructed lower courts to either "accept the plea more promptly" or to "accept the plea before it reviews the plea agreement and imposes a sentence." *Arami*, 536 F.3d at 485.

## B. Withdrawing a Guilty Plea Under Rule 11(d)(1)

If the Court has not accepted a guilty plea, a motion to withdraw a guilty plea is analyzed under Rule 11(d)(1), a Rule which the Fifth Circuit describes as "absolute." *See, e.g.*, *id.* at 483 ("[A] defendant has an absolute right to withdraw his or her guilty plea before the court accepts it."). Accordingly, before the Court accepts a defendant's guilty plea, the "defendant may withdraw a plea of guilty . . . for any reason or no reason." FED. R. CRIM. P. 11(d)(1).

## C. Withdrawing a Guilty Plea Under Rule 11(d)(2)(B)

Once a court accepts the guilty plea, however, there is no absolute right to withdraw a guilty plea, and the defendant bears the burden of establishing a "fair and just reason for requesting the withdrawal." *Id.* 11(d)(2)(B); *United States v. Carr*, 740 F.2d 339, 343–44 (5th Cir. 1984).

To determine whether a defendant has shown a "fair and just reason" for withdrawal, a court examines the *Carr* factors. 740 F.2d at 343–44. These include: (1) whether the defendant asserted actual innocence; (2) whether withdrawal of the plea would prejudice the government; (3) the extent of the defendant's delay, if any, in filing the motion to withdraw; (4) whether withdrawal would substantially inconvenience the court; (5) whether the defendant was benefitted by the close assistance of counsel; (6) whether the guilty plea was knowing and voluntary; and (7) the extent to which withdrawal would waste judicial resources. *Id.*

Under *Carr*, "[n]o single factor or combination of factors mandates a particular result." *United States v. Badger*, 925 F.2d 101, 104 (5th Cir. 1991). Instead, a court makes its determination based on the totality of the circumstances, which is informed by the factors set forth in *Carr*. *United States v. Powell*, 354 F.3d 362, 370–71 (5th Cir. 2003); *see also United States v. Herrod*, 595 F. App'x 402, 409 (5th Cir. 2015) ("[T]he trial court's decision regarding a withdrawal motion must be accorded broad discretion." (citing *Carr*, 740 F.2d at 344)).

## ANALYSIS

The Court will analyze Mr. Berglund's Motion in two parts. *First*, the Court determines whether the Court accepted Mr. Berglund's guilty plea. As explained below, the Court concludes that it is abundantly clear that the undersigned did. Thus, the Motion must be analyzed under Rule 11(d)(2)(B), not Rule 11(d)(1). *Second*, the Court concludes that under Rule 11(d)(2)(B), Mr. Berglund failed to carry his burden of establishing a "fair and just reason for requesting the withdrawal."

Thus, because the Magistrate Judge erred by analyzing the Motion under Rule 11(d)(1), rather than Rule 11(d)(2)(B), the Court will **REVERSE** the Magistrate Judge's Order. And because Mr. Berglund failed to carry his burden under Rule 11(d)(2)(B), the Court will **DENY** the Motion.[2]

## A. The undersigned accepted Mr. Berglund's guilty plea.

Based on the "language of the trial court and the context in which it was used," *Tyerman*, 641 F.3d at 943, the undersigned accepted Mr. Berglund's guilty plea at the second colloquy. *See Battle*, 499 F.3d at 321–22 (rejecting the need of talismanic magic words for an acceptance).

---

[2]"Although defendants are not entitled to an evidentiary hearing, a hearing is required 'when the defendant alleges sufficient facts which, if proven, would justify relief.'" *Powell*, 354 F.3d at 370 (citing *United States v. Mergist*, 738 F.2d 645, 648 (5th Cir. 1984)). The Court did not hold an evidentiary hearing for two reasons: *first*, the Magistrate Judge already held a hearing on the Motion; *second*, even if the reasons in the Motion are assumed to be true, the totality of the *Carr* factors do not tip in Mr. Berglund's favor to justify the relief he seeks.

6

Fifth Circuit caselaw guides the Court's analysis. *First*, like other Circuits,[3] the Fifth Circuit recognizes that courts can explicitly or implicitly accept a defendant's guilty plea. *See, e.g.*, *Gutierrez-Gress*, 458 F. App'x at 405 ("The record further shows that the district court implicitly accepted [defendant's] guilty plea and his plea agreement."); *United States v. Sanford*, 429 F.3d 104, 106 n.2 (5th Cir. 2005) ("Although the district court did not enter a formal order accepting the guilty plea, the district court's actions indicate that it did, in fact, accept the plea.").

*Second*, although the Fifth Circuit has not explicitly articulated how a court may *implicitly* accept a guilty plea, *Cessa* recognizes certain actions that, if undertaken by the district court, would sufficiently indicate an implicit acceptance. 626 F. App'x at 469. *Cessa* recognized that an implicit acceptance likely required: (1) "some affirmative action on the part of the district court with respect to the specific defendant at issue beyond referring a plea colloquy hearing to a magistrate judge," and (2) a "statement [by the district court], at any proceeding prior to the [withdrawal] motion, indicating that it provisionally accepted [a] guilty plea." *Id.*

The facts are simple; it is abundantly clear that the undersigned accepted Mr. Berglund's guilty plea. In the *middle* of his criminal jury trial, Mr. Berglund changed his plea to guilty. Mr. Berglund then appeared before the Magistrate Judge, who administered an extensive plea colloquy. *See* ECF No. 199 at 6–7 (noting how extensive the plea colloquy was). And despite defense counsel's objections, the Magistrate Judge concluded that: Mr. Berglund was of sound mind and fully understanding of all the proceedings; Mr. Berglund's plea was

---

[3]*See generally United States v. Arafat*, 789 F.3d 839 (8th Cir. 2015); *United States v. Byrum*, 567 F.3d 1255 (10th Cir. 2009); *United States v. Jones*, 472 F.3d 905 (D.C. Cir. 2007); *United States v. Battle*, 499 F.3d 315 (4th Cir. 2007); *see also United States v. Andrews*, 857 F.3d 734, 740 (6th Cir. 2017) ("The circuits that have considered what is required to indicate acceptance of a guilty plea appear to agree that the decision to 'provisionally' or 'conditionally' accept a guilty plea pending the court's review of the defendant's PSR is enough to establish acceptance and trigger the 'fair and just' standard for withdrawal under Rule 11(d)(2).").

voluntary, knowing, and intelligent; and there was a factual basis for Mr. Berglund's plea. *See generally id.*

The undersigned then brought the Parties into the courtroom to verify that Mr. Berglund had indeed pleaded guilty, and that the plea had ended the trial. Relying on the Parties' affirmation, the Court released the jury from their service. Additionally, the Court instructed Mr. Berglund as to the next steps and placed him under presentencing conditions.[4] Based on the actions taken *before* the instant Motion was filed, everyone in the courtroom understood, as Mr. Berglund's Motion asserts, that "[t]he plea was accepted by the district court the same day" that Mr. Berglund pleaded guilty. ECF No. 168 at 4.

The Parties' subsequent actions confirm that the Court's explicitly accepted the guilty plea. To that end, the instant Motion and all related filings assert arguments analyzing the *Carr* factors under Rule 11(d)(2)(B)—not Rule 11(d)(1). In fact, the issue of acceptance was *never* raised by Mr. Berglund or the Government. Rather, the issue was first raised in the Magistrate Judge's Order Denying Mr. Berglund's Motion for a Continuance. *See* ECF No. 192 ("[T]he Motion to Withdraw Plea of Guilty will be analyzed pursuant to Rule 11(d)(1) of the Federal Rules of Criminal Procedure . . . ."). At the hearing, however, the Magistrate Judge acknowledged that he was unaware that the undersigned brought the Parties into the courtroom following the plea colloquy. ECF No. 199 at 2–3 ("I did not know there was a subsequent hearing before Judge Pittman to release the jury. So, I was unaware of that fact."). Thus, the Magistrate judge was operating under the (reasonable) assumption that Mr. Berglund had not interacted with the undersigned following his guilty plea.

If that were the case, Mr. Berglund would have an absolute right to withdraw his guilty plea under Rule 11(d)(1). But, as this Court made clear by its words and actions at the second colloquy, that is not the case.

---

[4]The Government (correctly) points out that only "a person who has been found guilty of an offense" can be released pending sentencing. *See* 18 U.S.C. § 3143(a); ECF No. 201 at 9 n.3. Because the Court issued an order to Berglund under 18 U.S.C. § 3143(a)—and all Parties noted there would be no objections—it follows that the Court had already accepted the guilty plea, at least implicitly, and adjudged him guilty.

*See* ECF Nos. 173, 194, 201. At most, Mr. Berglund could argue that his plea *agreement* has not been accepted.[5] But that would still comport with *Arami*'s directive and produce the same result. *See Arami*, 536 F.3d at 484–85 (directing courts to either "accept the plea more promptly" or to "accept the plea before it reviews the plea agreement and imposes a sentence").

But even if everyone in the courtroom during the second colloquy somehow misunderstood the undersigned, including the undersigned, and the guilty plea was not *explicitly* accepted, an analysis of the record still leads to the same conclusion: "The plea was [*implicitly*] accepted by the district court the same day" that Mr. Berglund changed his plea to guilty. ECF No. 168 at 4; *cf. Cessa*, 626 F. App'x at 469 ("No court has found implicit acceptance absent some affirmative action on the part of the district court with respect to the specific defendant at issue beyond referring a plea colloquy hearing to a magistrate judge.").

*First*, the undersigned told the jury that their service was no longer needed and released them from any restrictions regarding the case. *See* ECF No. 173 at 2–3 ("[Y]our duty as jurors in this case is *complete*. . . . Thank you all for your service, and you're *discharged* at this time.") (emphasis added). *Second*, the undersigned questioned both Parties, including Mr. Berglund himself, regarding the guilty plea. *See id.* at 3–4 ("[L]et's make sure the record is clear. . . . My understanding is that Berglund has entered a plea of guilty. . . . With that representation in mind, the Court will be . . . *accepting the plea*.") (emphasis added). *Third*, the undersigned ceased advising Mr. Berglund of his rights as a criminal defendant that is innocent until proven guilty and started advising Mr. Berglund as someone adjudged guilty, but not yet sentenced. *See id.* at 5 ("Now, *with your plea of guilty*, the *next phase* is the sentencing phase.") (emphasis added). *Fourth*, the undersigned

---

[5] *See United States v. Hyde*, 520 U.S. 670, 677–78 (1997) (distinguishing a guilty *plea* from a plea *agreement*). In accordance with *Hyde*, the Magistrate Judge (properly) informed Mr. Berglund that the Court could still reject his plea *agreement*. *See* ECF No. 191 ("Now, your plea agreement does not have some language including a promise by the government to dismiss other charges at sentencing or to not bring additional charges. So, if the district judge were to decide to reject the plea agreement based on that provision, you would then have an opportunity to withdraw your guilty plea and change it to not guilty under that scenario.").

advised Mr. Berglund of his presentencing conditions. *See, e.g.*, *id.* at 5–6 ("And you understand all those conditions you've been subject to the past year and a half, you continue to be subject to those?"). *Fifth*, recognizing the gravity of Mr. Berglund pleading guilty and the Court accepting the plea, the undersigned encouraged Mr. Berglund to spend the remainder of his time before sentencing with his family. *See id.* at 6 ("I think that I would use my time between now and sentencing wisely to be able to spend the holidays with your family.") *Finally*, the Court issued a Scheduling Order to govern Mr. Berglund's sentencing. *See* ECF No. 167.

The record further establishes that the undersigned took all these actions *before* Mr. Berglund filed the instant Motion. *Cf. Cessa*, 626 F. App'x at 469 ("Nor did the district court make a statement, at any proceeding prior to the motion, indicating that it provisionally accepted [the defendant's] guilty plea."). Thus, based on the undersigned's statements and actions, the undersigned accepted Mr. Berglund's guilty plea. The Magistrate Judge therefore erred by analyzing Mr. Berglund's Motion under Rule 11(d)(1), rather than Rule 11(d)(2)(B). Accordingly, the Court **REVERSES** the Magistrate Judge's Order (ECF No. 197).

## B. Mr. Berglund failed to carry his burden of establishing a "fair and just reason" for withdrawing his guilty plea as required by Rule 11(d)(2)(B).

Because Mr. Berglund failed to carry his burden of establishing a "fair and just reason" for withdrawal, the Court will **DENY** his Motion. A defendant may withdraw a guilty plea after the court accepts the plea, but before it imposes a sentence, if he "can show a fair and just reason for requesting the withdrawal." FED. R. CRIM. P. 11(d)(2)(B); *United States v. Lampazianie*, 251 F.3d 519, 524 (5th Cir. 2001). Compared to Rule 11(d)(1), there is no absolute right to withdraw a guilty plea, and the defendant bears the burden of establishing a fair and just reason for withdrawal. *United States v. Brewster*, 137 F.3d 853, 857–58 (5th Cir. 1998).

Mr. Berglund argues that five of the seven factors weigh in favor of this Court allowing him to withdraw his guilty plea. As explained below,

Mr. Berglund's arguments are without merit, and the Court is unpersuaded by the Motion.

    1.  Assertion of Innocence

The first *Carr* factor asks whether the defendant has asserted his innocence. *Carr*, 740 F.2d at 343–44. Mr. Berglund argues that because he asserted his innocence at two prior arraignments, he has asserted his innocence; this factor, he argues, therefore weighs in favor of him being allowed to withdraw his guilty plea. *See* ECF No. 168 at 2. Missing from his Motion, however, is a *new* assertion of innocence *after* having already plead guilty.

"Under the *Carr* framework, the defendant must not only assert his innocence, but also provide a 'substantial supporting record' for this assertion in order to support his motion to withdraw." *United States v. Strother*, 977 F.3d 438, 444 (5th Cir. 2020) (citing *United States v. Clark*, 931 F.2d 292, 295 (5th Cir. 1991)).

Mr. Berglund neither asserts his innocence nor presents any evidence to support his innocence. Accordingly, even if the Court construes the Motion as being an assertion of his innocence, Mr. Berglund failed to submit *any* evidence to support that assertion. Thus, the record is void of any evidence that would support an assertion of innocence by Mr. Berglund. *See, e.g., United States v. Harrison*, 777 F.3d 227, 235 (5th Cir. 2015) ("[A] defendant's assertion of actual innocence alone, without supporting evidence, is insufficient to warrant allowing withdrawal under *Carr*."); *United States v. London*, 568 F.3d, 563 (5th Cir. 2009) (finding no error in denying a withdrawal motion under *Carr* where the defendant "blankly asserted his innocence, providing no facts to support [his] change of heart").

Like Mr. Berglund, nearly every criminal defendant will plead "not guilty" at their first arraignment. That assertion alone, however, "is far from . . . sufficient to overturn denial of a withdrawal motion." *Carr*, 740 F.2d at 344. Were this Court to conclude otherwise, "the mere assertion of legal innocence would always be a sufficient condition for withdrawal, and withdrawal would effectively be an automatic right." *Carr*, 740 F.2d at 344; *see also United States v. Bond*, 87 F.3d 695, 701 (5th Cir.

1996) ("[A] contrary rule would grant the defendant an [i]nappropriate ability to reverse his decision to plead guilty."). Giving defendants the automatic right to withdraw a guilty plea already accepted by the Court would "degrade the otherwise serious act of pleading guilty into something akin to a move in a game of chess." *Hyde*, 520 U.S. at 677.

To protect against such gamesmanship by criminal defendants, the Fifth Circuit requires both an assertion of innocence *and* substantial supporting evidence in the record—a burden Mr. Berglund has failed to carry on both counts. Because Mr. Berglund neither asserted his innocence after pleading guilty nor provided evidence to support such an assertion, this factor weighs against withdrawing his guilty plea.

2. <u>Prejudice Towards the Government</u>

The second *Carr* factor asks whether the Government would suffer prejudice if the defendant withdrew his guilty plea. *Carr*, 740 F.2d at 343–44. Mr. Berglund argues that the Government would not be prejudiced because there is "no reason to believe that the government cannot effectively prosecute this case and present it to a jury for determination." ECF No. 168 at 2. Although it may be true that the Government could effectively prosecute and present this case to a jury, that fact alone does not mean that the Government will suffer no prejudice.

Contrary to Mr. Berglund's argument, the Fifth Circuit has stated that allowing a defendant "to withdraw the plea would be prejudicial to the Government because the prosecutor would have to again prepare for the same trial." *United States v. Field*, 322 F. App'x 386, 387 (5th Cir. 2009); *see also United States v. Sims*, 340 F. App'x 959, 962 (5th Cir. 2009) (noting that "withdrawal would prejudice the government, which would have to prepare for a new trial on all four counts"); *but see United States v. Neal*, 509 F. App'x 302, 311 (5th Cir. 2013) (noting that having to prepare for a trial a second time is an "inconvenience" and not necessarily "prejudice").

After presenting most of its case-in-chief, the government dropped nine counts in exchange for Mr. Berglund's plea. Thus, were he to withdraw his guilty plea, the Government would then have to prepare

for a *second* trial on all ten counts. Under *Field* and *Sims*, the Court cannot ignore the prejudice that the Government would suffer. The Court likewise cannot ignore *Neal*, which noted that preparing for a second trial would be more of an "inconvenience" than actual "prejudice." But unlike *Neal*, where the defendant pleaded guilty prior to the start of trial, Mr. Berglund decided to plead guilty on the *fourth day* of trial. Accordingly, because the Government already expended a vast number of resources to present its case-in-chief for three days, the Government would experience prejudice by having to expend the same resources a second time. Thus, like *Sims* and *Field,* this factor weighs against Mr. Berglund withdrawing his guilty plea.

More importantly, however, "the absence of prejudice to the Government does not necessarily justify reversing the district court's decision to deny a motion to withdraw a guilty plea." *United States v. Lord*, 915 F.3d 1009, 1015 (5th Cir. 2019); *Carr*, 740 F.2d at 344 ("[The Fifth Circuit does] not believe that the absence of a showing of prejudice to the government, by itself, should be sufficient to mandate permission to withdraw a plea when, as here, no credible reason is proffered."). Accordingly, even if the Court were to conclude that the Government would not suffer prejudice—which it explicitly does not conclude—this factor alone would not be enough to grant Mr. Berglund's Motion.

### 3.  Defendant's Delay in Requesting the Withdrawal

The third *Carr* factor asks whether the defendant delayed in requesting the withdrawal. *Carr*, 740 F.2d at 343–44. Under this factor, the Court can also consider "the reason why defenses advanced later were not proffered at the time of the original pleading," and "the reasons why a defendant delayed in making his withdrawal motion." *Carr*, 740 F.2d at 344.

To that end, Mr. Berglund argues there was no delay; he filed his Motion less than a week after pleading guilty. True enough. And typically, the shorter the time between the entry of a guilty plea and an attempt to withdraw that plea, the more that this factor weighs in favor of the defendant withdrawing his guilty plea. *Carr*, 740 F.2d at 344–45 (finding that a delay of 22 days was not "promptly filed"). But the Court

does not analyze the time between the guilty plea and the motion to withdraw in a vacuum. *See id.* at 345 ("The purpose [of allowing a defendant to withdraw a guilty plea] is not to allow a defendant to make a tactical decision to enter a plea, wait several weeks, and then obtain a withdrawal if he believes that he made a bad choice in pleading guilty.").

Mr. Berglund argues that the only reason his diminished-capacity defense "was not filed immediately is due to the diligence required of defense counsel to confirm urgent medical findings of defendant as described" in the Motion. *See generally* ECF No. 168. A closer inspection of the "urgent medical findings," however, reveals that the "medical findings" should have become "urgent" on the *second day* of trial rather than *after* Mr. Berglund pleaded guilty. *See* ECF No. 183 ("The symptoms began 4 days ago [on November 7, 2021]. The symptoms are reported as being moderate. The symptoms occur constantly."). Despite Mr. Berglund having symptoms for four straight days, neither he nor his counsel ever attempted to halt the trial to undergo a competency test to ensure that he could stand trial under the Constitution.[6] In fact, Mr. Berglund's counsel claims to have only noticed a difference in behavior on the day that he decided to plead guilty. ECF No. 168 at 4. But if Mr. Berglund's symptoms were ongoing, his behavioral change should have been noticeable at the outset of the trial—not *after* pleading guilty.

While Mr. Berglund's counsel voiced concerns regarding Mr. Berglund's diminished capacity to the Magistrate Judge,[7] Mr. Berglund

---

[6]A criminal defendant may not be tried unless he is competent. *Pate v. Robinson*, 383 U.S. 375, 378 (1996). The standard for competence to stand trial is whether the defendant has "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" and has "a rational as well as factual understanding of the proceedings against him." *Dusky v. United States*, 362 U.S. 402, 402 (1960). Whether the defendant is set to stand trial or set to plead guilty, the competency standard is the *same*. *See generally Godinez v. Moran*, 509 U.S. 389 (1993). Thus, any alleged concerns regarding Mr. Berglund's capacity to plead guilty, if valid, should have also caused concerns during the entirety of the trial—which did not occur.

[7]Oddly, Mr. Berglund's counsel raised the diminished capacity defense by referencing the Texas Rules of Professional Conduct, instead of arguing that Mr. Berglund was not competent to plead guilty under the Due Process Clause. The Texas Rules, unlike the Due Process Clause, are purposed with governing attorneys, not to protect criminal defendants facing prosecution. Furthermore, the Fifth Circuit has yet to decide whether diminished-capacity evidence is admissible to defeat the mental state requirement of a specific intent crime. *See United States v. Herbst*, 460 F. App'x

14

heard, and responded to, these concerns—quickly dismissing them in a competent, knowing, and intelligent manner. ECF No. 191 at 13. Mr. Berglund's Motion, however, fails to explain why he did not raise his defenses sooner or explain why his adamant rejections of those arguments no longer apply. Thus, although the Motion is timely, the Motion wholly fails to explain why the arguments being asserted in the Motion are the same arguments Mr. Berglund rejected under oath, in open court, merely five days earlier. Accordingly, Mr. Berglund's Motion lacks a persuasive justification for why he failed to raise his diminished capacity defense either during trial or while he was pleading guilty.

Were the Court to conclude otherwise, defendants could routinely withdraw guilty pleas merely because they filed a Motion within a weeks' worth of time. Such a conclusion would hinder the efficient use of judicial and prosecutorial resources. Instead, the undersigned understands this factor to be analyzed in the context of the entire trial. And viewed through that lens, the Court concludes that this factor is neutral, at best—Mr. Berglund did file his Motion in a timely manner. But that alone is not enough. There must be a fair and just reason explaining why those defenses were not presented to the Court either during trial or during the plea colloquy; not merely a shot in the dark based on buyer's remorse.

4.  Close Assistance of Counsel

The fifth *Carr* factor asks whether "close assistance of counsel" was available to the defendant. *Carr*, 740 F.2d at 343–44. Determining whether a defendant received close assistance of counsel "requires a fact-intensive inquiry" which is distinct from an inquiry into whether the defendant received effective assistance of counsel in accordance with the Sixth Amendment. *Strother*, 977 F.3d at 445; *United States v. McKnight*, 570 F.3d 641, 646 (5th Cir. 2009).

Mr. Berglund argues that this factor (somehow) weighs in favor of withdrawing his guilty plea because his defense counsel was actively

---

387, 395–96 (5th Cir. 2012). Thus, like the Magistrate Judge, the Court does not "fully understand what [Mr. Berglund is] trying to argue," ECF No. 199 at 10, and questions the motives behind the Motion and its related filings.

advising him against pleading guilty. That is an incorrect statement of the law. Rather, the constant communication and complete availability of Mr. Berglund's counsel weighs *against* the withdrawal of his guilty plea. *See, e.g.*, *Strother*, 977 F.3d at 444–45 (stating that the Fifth Circuit has found that "close assistance of counsel was available where counsel negotiated a plea agreement, filed motions, discussed the case with the defendant, and explained the defendant's rights and the weight of the evidence . . . and where counsel was available throughout the proceedings and the defendant expressed satisfaction with counsel").

The record is replete with evidence that Mr. Berglund's counsel was available throughout the entirety of the proceedings,[8] that his counsel filed numerous (albeit frivolous) motions on Mr. Berglund's behalf, and that his counsel negotiated the plea deal Mr. Berglund accepted. The record further demonstrates that Mr. Berglund's counsel discussed the case, the weight of the evidence, and Mr. Berglund's rights as a criminal defendant. Mr. Berglund even testified at his plea colloquy *and* at the instant Motion's hearing that he was satisfied with his counsel. *See* ECF Nos. 191 at 18; 199 at 8–9. Accordingly, because Mr. Berglund was not denied close assistance of counsel, this factor weighs against Mr. Berglund being able to withdraw his guilty plea.[9]

### 5. Knowing and Voluntary Plea

The sixth *Carr* factor asks whether the defendant's original plea was knowing and voluntary. *Carr*, 740 F.2d at 343–44. Here, Mr. Berglund argues that "his plea was not made knowingly and voluntarily because he suffered from a diminished capacity mental state." ECF No. 168. To validly waive constitutional rights, a guilty plea must be "voluntary,

---

[8]The undersigned is aware of only two times that Mr. Berglund's counsel was *not* available: *first*, when counsel failed to appear for a show cause hearing related to repeated violations of the Court's Scheduling Order (ECF No. 141); *second*, when counsel allegedly failed to make an appointment to review case-notes related to Mr. Berglund's case at the FBI's office. *See* ECF No. 209 at 15–16 ("*Q.* And those haven't been produced to defense counsel? *A.* They were made available for you to review. I'm not aware that you came over to our office to schedule an appointment.").

[9]Although the Court concludes that Mr. Berglund *did* receive close assistance of counsel, the Court notes that this conclusion does *not* prejudice any later ineffective assistance of counsel claim that Mr. Berglund might pursue in a subsequent proceeding. *See McKnight*, 570 F.3d at 648.

knowing, and intelligent." *Lord*, 915 F.3d at 1016. "This requires that the defendant understand the nature of the charges against him, the consequences of his plea, and the nature of the constitutional protection that he is waiving." *Strother*, 977 F.3d at 445. The Fifth Circuit gives "significant weight to a defendant's sworn testimony that his plea is voluntary and uncoerced." *Id.* at 446.

Throughout Mr. Berglund's plea colloquy, the Magistrate Judge explained, in detail, Mr. Berglund's rights and ensured his understanding of them. And Mr. Berglund demonstrated that his decision to plead guilty was made knowingly and voluntarily throughout the entirety of the hearing. Rather than argue that Mr. Berglund did not plead guilty in a voluntary, knowing, and intelligent manner, however, Mr. Berglund's Motion focuses on the actions of Mr. Berglund's counsel. Because the Motion fails to do so, the Court will analyze the plea colloquy between Mr. Berglund and the Magistrate Judge to ensure his plea was voluntary, knowing, and intelligent.

*First*, Mr. Berglund answered questions to establish his competence and that his plea was intelligent:

*THE COURT:* Do you suffer from any mental or emotional disability?

*DEFENDANT BERGLUND:* No, Your Honor.

*THE COURT:* Mr. Berglund, are you of sound mind and do you fully understand what we're doing here today?

*DEFENDANT BERGLUND:* I do, Your Honor.

*THE COURT:* Let me ask defense counsel, Ms. Knox, do you have any reason to believe that your client is not fully competent to enter a plea of guilty, or do you have concerns you wish to state at this time?

*MS. KNOX:* Yes, Your Honor. I do believe that my client meets the competency standard; however, I do have a concern that he is, at least temporarily, exhibiting factors of diminished capacity under the Rules of Professional Conduct 1.16, Comment 2.

. . . .

*THE COURT:* All right. Mr. Berglund, you were listening as your attorney stated what she just has. Do you -- do you agree that you have a diminished capacity as that was just defined?

17

*DEFENDANT BERGLUND:* No, Your Honor.

*THE COURT:* All right. And do you believe that you are fully competent and understanding the consequences of pleading guilty and what that means to you?

*DEFENDANT BERGLUND:* Yes, Your Honor.

ECF No. 191 at 12–13.

*Second*, Mr. Berglund repeatedly demonstrated that he understood his plea agreement and acknowledged that he was waiving his rights voluntarily—not due to threats, force, promises outside the plea agreement, or predictions about this sentence:

*THE COURT:* Did you read this plea agreement carefully?

*DEFENDANT BERGLUND:* Yes, Your Honor.

*THE COURT:* Do you fully understand the plea agreement that's been presented and signed by you?

*DEFENDANT BERGLUND:* Yes, Your Honor.

. . . .

*THE COURT:* Did you voluntarily and of your own free will enter into this agreement with the government?

*DEFENDANT BERGLUND:* Yes, Your Honor.

. . . .

*THE COURT:* I do need to ask you, Mr. Berglund, has anyone mentally, physically, or in any other way attempted to force you to plead guilty in your case?

*DEFENDANT BERGLUND:* No, Your Honor.

. . . .

*THE COURT:* That's all right. And so I will ask, Ms. Knox, is the guilty plea of your client consistent with your legal advice?

*MS. KNOX:* No, Your Honor.

*THE COURT:* Okay. And despite that being inconsistent with what your attorney's advising you, Mr. Berglund, is it still your intention and your stated plea of guilty?

*DEFENDANT BERGLUND:* Yes, Your Honor.

*Id.* at 18–21, 23–24.

*Third*, Mr. Berglund established that he understood the consequences of his guilty plea, that he was pleading guilty due to the truth and veracity of the factual resume, and that he was pleading guilty voluntarily and of his own free will:

> *THE COURT:* Mr. Berglund, do you understand that if you plead guilty, you may be subject to those penalties and consequences that were just explained?
>
> *DEFENDANT BERGLUND:* Yes, Your Honor.
>
> *THE COURT:* Do you further understand that if the sentence you receive is more severe than you might expect, you'll still be bound by your plea of guilty and you'll have no right to withdraw it?
>
> *DEFENDANT BERGLUND:* Yes, Your Honor.
>
> . . . .
>
> *THE COURT:* Did you read and fully understand your Factual Resume?
>
> *DEFENDANT BERGLUND:* Yes, Your Honor.
>
> *THE COURT:* Are the facts stated in your Factual Resume true and correct?
>
> *DEFENDANT BERGLUND:* Yes, Your Honor.
>
> . . . .
>
> *THE COURT:* Mr. Berglund, you listened as those facts were read, and do you once again affirm the truth and veracity of those facts?
>
> *DEFENDANT BERGLUND:* Yes, Your Honor.

*Id.* at 22, 24, 26

*Fourth*, after the Magistrate Judge had accepted the guilty plea and adjudged him guilty, Mr. Berglund came before the undersigned for further questioning to ensure that he understood what was expected of someone adjudged guilty, but not yet sentenced:

> *THE COURT:*  All right. Mr. Berglund, please stand and let me give you some instructions. Now, with your plea of guilty, the next phase is the sentencing phase, and I'll give some dates for that. But in pleading guilty and the Magistrate Judge's finding and the Government not objecting, you're going to be released on your own personal recognizance. Do you understand that?
>
> *THE DEFENDANT:*  Yes, Your Honor.

19

*THE COURT:* And you understand all those conditions you've been subject to the past year and a half, you continue to be subject to those?

*THE DEFENDANT:* Yes, Your Honor.

*THE COURT:* And any violation of those? Whether it's as simple as you deciding to use drugs, or you get in trouble with the law, you're subject to being taken in immediately. Do you understand?

*THE DEFENDANT:* Yes, Your Honor.

*THE COURT:* And that you still have to check in and make sure that you're complying with all those standards. Do you understand that?

*THE DEFENDANT:* Yes, Your Honor. I did check in this month that I was here.

ECF No. 173 at 5–6.

Despite these extensive colloquies, however, Mr. Berglund argues that "his plea was not made knowingly and voluntarily because he suffered from a diminished capacity mental state." ECF No. 168. But the record is clear: Mr. Berglund pleaded guilty in a "voluntary, knowing, and intelligent" manner. Mr. Berglund's objection is thus without merit.

Further, the evidence Mr. Berglund has submitted, even if accepted as true, is unpersuasive. Both the Magistrate Judge and the undersigned questioned Mr. Berglund and advised him thoroughly concerning the details and consequences of his plea. In response, Mr. Berglund stated repeatedly that he understood the proceedings and acknowledged his guilt even though his counsel was advising him against his actions. Moreover, although Mr. Berglund submitted medical findings from an urgent care facility, Mr. Berglund failed to submit any evidence to prove that his mental capacity was in any way impaired *during* the plea colloquy. Rather the record indicates, at most, that Mr. Berglund was experiencing symptoms that are presumably common for any defendant sitting through a criminal trial with their innocence in the hands of a jury of their peers. And despite the record establishing that the symptoms had been present for four days without anyone finding them serious enough to ask the Court for a cognitive hearing, Mr. Berglund argues, without support, that they were severe enough to go to an urgent care facility only *after* he decided to plead

guilty. Certainly, it is not unusual for a criminal defendant—or even the attorneys or judge—to suffer from fatigue or heightened anxiety in the middle of trial.

Additionally, at the hearing before the Magistrate Judge, Mr. Berglund's counsel withdrew the concerns regarding Mr. Berglund's alleged diminished capacity. *See* ECF No. 199 at 10 ("While I did strongly believe that at the time my client entered his plea of guilty, against my advice, was suffering from diminished capacity, I no longer believe that is the cause -- or the case."). Thus, for this factor to weigh in favor of withdrawing the guilty plea, the Court would have to conclude that Mr. Berglund had a sudden bought of diminished capacity that prevented him from pleading guilty in a voluntary, knowing, or intelligent manner. And the Court would have to further conclude that the same medical ailment immediately waned so that Mr. Berglund's counsel felt comfortable withdrawing any such concerns going forward.[10] The Court is unpersuaded.

Therefore, based on the evidence that Mr. Berglund pleaded guilty in a "voluntary, knowing, and intelligent" manner and that his diminished capacity defense lacks merits, this factor weighs against withdrawing his guilty plea.

### 6. Inconvenience to the Court and Waste of Judicial Resources

The remaining *Carr* factors ask whether withdrawal would substantially inconvenience the court and whether withdrawal would waste judicial resources. *Carr*, 740 F.2d at 343–44. Because these factors weigh heavily against withdrawing his guilty plea, Mr. Berglund did not even attempt to argue these factors in his Motion. Regardless, the Court finds that the record is replete with evidence that "withdrawal would

---

[10]Like the Magistrate Judge, the Court cannot conclude that Mr. Berglund suffered from any sort of diminished capacity. *See* ECF No. 199 at 10–11 ("I've got to tell you, I was very unimpressed with the diminished capacity basis that you put forward. . . . [I]f you're playing some kind of game, you're in the wrong place to play it."). The Court is deeply disturbed by Mr. Berglund's cavalier attempt at raising such a defense. Claiming diminished capacity is not a "defense" that should be used as an ace of spades to withdraw your guilty plea after having buyer's remorse. Such actions smack of gamesmanship and should not be tolerated.

substantially inconvenience the court" and that "withdrawal would waste judicial resources."

The time expended by this Court and the Government has already been substantial. Multiple continuances (ECF Nos. 27–28, 42–43); numerous frivolous motions (ECF Nos. 84–92, 103–04); a show cause hearing regarding repeated violations of the Court's Scheduling Order (ECF Nos. 141, 145, 166); and an evidentiary hearing regarding improperly served subpoenas (No. 4:21-mc-15-P, ECF Nos. 1–4) have already inconvenienced both the Court and the Government. More likely than not, additional, frivolous delays and filings will occur if the Court allows Mr. Berglund to withdraw his guilty plea.

The Court does not take these factors lightly and will devote whatever time is needed to seek justice in this case. Nor does the time that it takes to resolve issues regarding one's guilt or innocence negatively affect this Court's consideration of the Motion. However, given that the repeated disregard of the Court's time or resources has become routine, the remaining factors—inconvenience to the court and waste of judicial resources—weigh against allowing Mr. Berglund to withdraw his guilty plea.

### ORDER

Because the Magistrate Judge erred in analyzing the Motion under Rule 11(d)(1), rather than Rule 11(d)(2)(B), the Court **REVERSES** the Magistrate Judge's Order Granting Mr. Berglund's Motion (ECF No. 197). Accordingly, based on the foregoing reasons and considering the totality of the circumstances, the Court concludes that the Motion should be, and is hereby, **DENIED.**

**SO ORDERED** on this **17th day** of **December, 2021.**

Mark T. Pittman
UNITED STATES DISTRICT JUDGE

22